

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Donna Ottanio | ) | Docket No.: 2015-01-0091 |
|     Employee, | ) | |
| | ) | State File No.: 9736 2016 |
| v. | ) | |
| | ) | Judge Audrey A. Headrick |
| Quality of Life Home Care, LLC and | ) | |
| AmTrust Group | ) | |
|     Employer/Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED MEDICAL BENEFITS

This matter came before the Court on May 16, 2016, on a Request for Expedited Hearing filed by the employee, Donna Ottanio, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are whether Ms. Ottanio is likely to prevail at a hearing on the merits that she sustained a compensable right-knee injury and, if so, whether her subsequent gastrointestinal bleed arose primarily from medication prescribed for the right-knee injury. For the reasons set forth below, the Court finds Ms. Ottanio is not likely to prevail at a hearing on the merits in proving she sustained a compensable right-knee injury.[1]

### History of Claim

Ms. Ottanio is a fifty-seven-year-old resident of Bradley County, Tennessee. She worked for Quality of Life as a non-medical caregiver. Ms. Ottanio allegedly suffered a right-knee injury on December 4, 2014, while lifting a wheelchair. The parties stipulated that Quality of Life paid all medical bills directly related to the alleged right-knee injury.[2]

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

[2] As addressed below, it was only after Quality of Life provided authorized treatment for Ms. Ottanio's right-knee injury that it discovered she had a pre-existing right-knee meniscus tear that she failed to disclose to her treating physician.

1

At the expedited hearing, Ms. Ottanio announced to the Court she was not seeking temporary disability benefits.

As part of its pre-employment process, Ms. Ottanio signed a Drug Screening Authorization form for Quality of Life.[3] (Ex. 8.) The form requested that the applicant list any prescribed or over-the-counter medications taken within the last thirty days. *Id.* Ms. Ottanio listed Aleve. *Id.* During the hearing, Ms. Ottanio testified she stopped taking Aleve at some point prior to working for Quality of Life and did not take Aleve again after her injury on December 4, 2014.

April Wells, former office manager for Quality of Life, testified regarding a discrepancy in the events surrounding Ms. Ottanio's injury. On December 11, 2014, Ms. Ottanio called Ms. Wells to report her injury from lifting a client's wheelchair on December 4, 2014. When Ms. Wells first spoke with Ms. Ottanio, she initially told Ms. Wells she followed a client's daughter to a doctor's appointment. Ms. Wells' unrebutted testimony was that Ms. Ottanio subsequently reported to her that she had actually ridden with the client's daughter to the doctor's appointment. Ms. Wells specifically recalled the discrepancy because Quality of Life and TennCare both have specific policies regarding non-medical caregivers riding with clients.

Nevertheless, Quality of Life authorized Ms. Ottanio to see a medical provider at Doctors Express on December 11, 2014, regarding her right-knee pain. (Ex. 2.) She gave a history of lifting a wheelchair when she twisted her right knee. *Id.* Ms. Ottanio disclosed that one of the medications she was already taking was Aleve. *Id.* The medical provider diagnosed her with a knee strain/sprain, prescribed Naprosyn, gave an injection, and referred her to an orthopedic physician. *Id.*

Ms. Ottanio saw Dr. Patterson Stone, an authorized orthopedic physician, on December 15, 2014.[4] (Ex. 3.) Dr. Stone noted, "[a]t the time of the injury she was seen at Doctors Express. Given RX for Naproxen, states after reading the brochure she did not take the medicine." *Id.* Dr. Stone further noted, "[h]ave discussed medication and the effect NSAIDS could have with her blood pressure medication." *Id.*

Ms. Ottanio testified Dr. Stone's office note is incorrect because she did choose to take Naproxen and discontinue her blood pressure medication. As for the conflict between her testimony and Dr. Stone's note, Ms. Ottanio said there was a miscommunication. However, she stated she did not recall Dr. Stone warning her about

---

[3] Morgan Yates, Human Resource Manager for Quality of Life, testified Ms. Ottanio was given an examiner's statement during new hire orientation that she was supposed to have completed and signed by a physician. However, Ms. Yates stated she did not receive the form back from Ms. Ottanio.

[4] Although Ms. Ottanio indicated on the Petition for Benefit Determination that she selected Dr. Stone from a panel, there was no evidence submitted regarding that issue. However, at the very least, Quality of Life apparently authorized Dr. Stone as a treating physician since it stipulated it paid for all of the medical treatment obtained by Ms. Ottanio for her right knee.

Naproxen until after she experienced a gastrointestinal bleed.

Dr. Stone's December 15, 2014 office note indicates Ms. Ottanio denied "knee pain or swelling prior to this injury."[5] *Id.* Ms. Ottanio also denied drinking alcoholic beverages. *Id.* After examining Ms. Ottanio and reviewing the x-rays taken, Dr. Stone diagnosed her with a right-knee, lateral meniscus tear and injected her knee. *Id.*

On December 26, 2014, Ms. Ottanio sought emergency treatment at Skyridge Medical Center for a gastrointestinal bleed. (Ex. 4.) She denied having any gastrointestinal bleeding in the past. *Id.* The record reflects Ms. Ottanio provided the following history to Dr. William Buchner, Jr.:

> *The patient has a history of taking Aleve. 8-9 months ago in Florida she was diagnosed with a right knee meniscal tear, and she was using Aleve regularly at that time.* When her knee improved, she reduced the frequency of Aleve [i]ngestion to 5 times per week. Approximately 2 weeks ago she reinjured her right knee and again began using Aleve twice daily. *She also has a history of alcohol [i]ngestion drinking 3-4 beers on a daily basis for many years.*[6] . . . She also smokes a pack to a pack and a half of cigarettes daily for the past 40 years.

*Id.* (Emphasis added.) Regarding the above-referenced history, Ms. Ottanio disputed the accuracy of the record and stated she was unconscious and was not talking to doctors or nurses. However, Dr. Buchner noted Ms. Ottanio had no syncope (loss of consciousness) and was "[a]lert and oriented." *Id.* Upon discharge from Skyridge on December 30, 2014, the medical provider advised Ms. Ottanio to "[a]void NSAIDs (nonsteroidal anti-inflammatory drugs), alcohol, and tobacco." *Id.*

On January 1, 2015, Ms. Ottanio returned to Skyridge because she was vomiting blood. *Id.* She advised medical personnel she "passed out." *Id.* At that visit, Ms. Ottanio gave a history of smoking up to one-half pack of cigarettes per day and drinking two to three beers daily. *Id.* She advised she had not taken Aleve for the last five days. *Id.* The physician diagnosed Ms. Ottanio with "[r]ecurrent upper gastrointestinal bleeding/hematemesis" that was "[l]ikely due to peptic ulcer disease." *Id.* She was discharged on January 9, 2015. *Id.*

When Ms. Ottanio returned to Dr. Stone on January 19, 2015, she attributed the onset of her gastrointestinal bleed to the Naproxen prescribed by Doctors Express.[7] (Ex.

---

[5] Ms. Ottanio also did not disclose any prior knee condition to the medical provider at Doctors Express. (Ex. 2.)

[6] Under "Social History" in the December 15, 2014, visit with Dr. Stone, the record states Ms. Ottanio "does not drink alcoholic beverages."

[7] Ms. Ottanio testified she did not know that Aleve and Naproxen are the same medication. As the pre-employment Drug Screening Authorization form indicates, Ms. Ottanio listed she was taking Aleve at the time Quality of Life

3

3.) Dr. Stone's right-knee diagnosis remained the same; however, he also diagnosed her gastrointestinal bleed as "secondary to use of NSAID (Naproxen)" based on the history given by Ms. Ottanio. *Id.* Dr. Stone instructed Ms. Ottanio not to take any over-the-counter NSAIDs. *Id.*

On January 21, 2015, Dr. Buchner, one of the physicians who treated Ms. Ottanio at Skyridge, prepared a letter regarding her prior gastrointestinal bleed. (Ex. 5.) He opined the following: "Our practice has treated [Ms. Ottanio] for a recent upper gastrointestinal bleed at Skyridge Medical Center. I feel a combination of the patient's NSAID use, ETOH, caffeine and cigarette use could have caused the problem." *Id.*

When Ms. Ottanio saw Dr. Stone on September 14, 2015, he placed her at maximum medical improvement with no permanent partial impairment.[8] *Id.*

Regarding the prior right-knee meniscal tear referenced in the Skyridge records, Ms. Ottanio testified the injury occurred two to three years prior to starting her job at Quality of Life. She acknowledged Dr. Stone asked if she had prior problems with her knee, and she told him "no." Ms. Ottanio explained she did not disclose the prior injury because she was not having knee pain when Quality of Life hired her. However, she acknowledged she understood now that her negative response to Dr. Stone's question might have been misleading. Since Dr. Stone was unaware of her pre-existing right-knee condition, Ms. Ottanio agreed he could not give an opinion as to whether the work incident caused an aggravation that primarily arose out of her work duties.

The medical evidence indicated Ms. Ottanio first sought treatment for her prior right-knee condition on January 11, 2013, with Dr. Sanjay Shah. (Ex. 6.) She requested a letter with restrictions for work due to right-knee pain. *Id.* Dr. Shah ordered a right-knee MRI, which indicated a medial meniscus tear, degenerative arthritis, and chondromalacia. *Id.* Ms. Ottanio advised Dr. Shah that her "knee pain was preceded by trauma." *Id.* During the expediting hearing, Ms. Ottanio testified she did not recall returning to see Dr. Shah for follow-up treatment after her MRI. She also did not recall either the "trauma" referenced in Dr. Shah's note or the name of the orthopedic physician she asserted she saw one time for a steroid injection. Although Ms. Ottanio did not recall if she had continued problems with her right knee, she did not dispute Dr. Shah's notes reflecting that she continued seeing him through August 28, 2013, for her right knee. After August 28, 2013, Ms. Ottanio continued treating with Dr. Shah for other medical issues. As of April 24, 2014, Dr. Shah's note listed the right-knee medial meniscus tear as a current problem. *Id.*

As for the numerous discrepancies in Ms. Ottanio's testimony and the medical

---

hired her. (Ex. 8.)
[8] Under "Social History," Ms. Ottanio indicated that she "never" consumed alcohol. *Id.*

evidence, she stated she was in pain, did not remember much, and never denied she took Aleve. Ms. Ottanio believed the Naproxen prescribed for the December 4, 2014 knee injury contributed to her subsequent gastrointestinal bleed that resulted in hospitalizations at Skyridge. She requested the Court to require Quality of Life pay for the medical bills related to the gastrointestinal bleed.

Quality of Life argued it has several issues with Ms. Ottanio's request for payment of medical bills related to the gastrointestinal bleed. It stated Ms. Ottanio had a pre-existing, right-knee meniscal tear she never disclosed to Dr. Stone, her treating orthopedic physician. Quality of Life disputed the compensability of Ms. Ottanio's right-knee injury because there was no medical proof that any aggravation of her pre-existing condition primarily arose out of her work duties. It also pointed out Ms. Ottanio has no medical proof causally relating her gastrointestinal bleed back to the December 4, 2014, incident. Instead, in reliance upon *Anderson v. Westfield Group*, 259 S.W.3d 669 (Tenn. 2008), Quality of Life argues Ms. Ottanio's gastrointestinal bleed was due to an intervening injury caused by her own conduct. Further, Quality of Life contended Ms. Ottanio is not credible.

Ms. Ottanio filed a Petition for Benefit Determination on November 24, 2015, seeking benefits in relation to her gastrointestinal bleed. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on January 25, 2016. Ms. Ottanio filed a Request for Expedited Hearing, and this Court heard the matter on May 16, 2016.

### Findings of Fact and Conclusions of Law

Ms. Ottanio has the burden of proof on all essential elements of a workers' compensation claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[9] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). She is not required to prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Ottanio has the burden to come forward with sufficient evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits. *Id.*

---

[9] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

The following general principles govern adjudication of this proceeding. In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Ms. Ottanio must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Based upon the evidence presented, the Court finds Ms. Ottanio's testimony is not credible. Most importantly, Ms. Ottanio made material omissions in the information she provided to Dr. Stone, her treating physician. She failed to disclose her pre-existing right-knee meniscus tear at her initial visit with Dr. Stone, and she continued to omit that information after he diagnosed her with the same condition. There were also internal contradictions in Ms. Ottanio's trial testimony. For example, she disputed the accuracy of the history provided to Dr. Buchner at Skyridge on December 26, 2014. Ms. Ottanio testified she was unconscious and not talking with doctors or nurses. However, Dr. Buchner specifically noted in the record Ms. Ottanio had no loss of consciousness and was "[a]lert and oriented." (Ex. 4.)

Additionally, contradictions exist within Ms. Ottanio's medical records. Dr. Buchner opined that her gastrointestinal bleed could have been caused by "a combination of [Ms. Ottanio's] NSAID use, ETOH, caffeine and cigarette use." (Ex. 3.) The medical records reflect that Ms. Ottanio's reports to providers differ regarding her alcohol use. She denied drinking alcoholic beverages when she saw Dr. Stone on December 15, 2014. Approximately two weeks later, Ms. Ottanio disclosed to Dr. Buchner at Skyridge that she had "a history of alcohol [i]ngestion drinking 3-4 beers on a daily basis for many years." (Ex. 4.) Dr. Stone's records also reflect Ms. Ottanio told him she had chosen not to take the Naproxen prescribed by Doctors Express. At the expedited hearing, Ms. Ottanio testified that history was incorrect. Further, although Ms. Ottanio gave a history to Dr. Shah in 2013 of a "trauma" causing her right knee meniscus tear, she testified she did not recall the trauma that caused her to sustain a significant knee injury. (Ex. 6.) Therefore, the Court finds that Ms. Ottanio is not credible.

With the above credibility finding in mind, the Court will address whether Ms. Ottanio would likely prevail at a hearing on the merits that she sustained an aggravation

6

of her pre-existing right-knee condition based on the medical proof presented. Before the incident on December 11, 2014, Ms. Ottanio's prior medical records indicate she had a right-knee, medial meniscus tear listed as a "current problem" on April 24, 2014. However, as Ms. Ottanio acknowledged during the expedited hearing, she did not disclose to Dr. Stone that she suffered a right-knee meniscal tear prior to the lifting incident on December 4, 2014. Instead, she specifically denied she had any prior right-knee pain or swelling. Likewise, she did not disclose that pertinent history to the medical provider at Doctors Express. Since Dr. Stone relied upon the information provided to him by Ms. Ottanio, he did not provide a medical opinion as to whether Ms. Ottanio sustained an aggravation of her pre-existing condition. Further, Dr. Stone did not provide a medical opinion as to whether Ms. Ottanio sustained an acute injury that arose primarily out of and in the course and scope of her employment with Quality of Life.

Ms. Ottanio offered no medical proof indicating that the need for medical treatment arose primarily out of and in the course and scope of her employment. She has not demonstrated she is likely to prevail at a hearing on the merits to establish she sustained either an acute injury or an aggravation of her pre-existing right-knee condition due to the December 11, 2014 incident. Additionally, the medical records of Dr. Buchner do not lead to the conclusion that Ms. Ottanio would likely prevail at a hearing on the merits that her gastrointestinal bleed resulted from her medical treatment for her knee injury. Therefore, her request for payment of medical expenses related to her gastrointestinal bleed is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Ottanio's request for payment of the treatment she sought for her gastrointestinal bleed is denied.

2. This matter is set for an Initial Hearing on August 17, 2016, at 10:00 a.m., ET.

   **ENTERED this the 10th day of June, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

7

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on August 17, 2016, at 10:00 a.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note:** **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Donna Ottanio
2. Office note of Doctors Express dated December 11, 2014
3. Medical records of Center for Sports Medicine & Orthopaedics
4. Medical records of Skyridge Medical Center
5. Correspondence of Dr. William F. Buchner, Jr. dated January 21, 2015
6. Medical records of Dr. Sanjay B. Shah
7. Correspondence from Morgan Yates at Quality of Life to Ms. Ottanio dated March 13, 2015
8. Drug Screening Authorization dated October 9, 2014

Marked for Identification Purposes Only:
1. Office note of Dr. Eston K. Wenger dated January 23, 2015
2. Prescription receipts

Technical record:[10]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. List of additional disputed issues and/or defenses submitted by Quality of Life Home Care, LLC via letter from Cheryl Leach, Director, dated January 21, 2016, with attachments (28 pages total)
4. Notice of Appearance
5. Show Cause Order
6. Order on Show Cause Hearing
7. Request for Expedited Hearing
8. Notice of Expedited Hearing

---

[10] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Medical Benefits was sent to the following recipients by the following methods of service on this the 10th day of June, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| Donna Ottanio | X | | | | X | 208 Hughes Avenue Cleveland TN 37312 dottanio@hotmail.com |
| Fred Baker, Attorney | | | | | X | fbaker@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11